Caruthers, J.,
delivered tlie opinion of the court.
This case raises a question of boundary between two entrys and grants, of rather a novel character. The plaintiff in error claims, under a grant to the University of North Carolina for 640 acres, dated 21st April, 1831 — entry 12th December, 1822 — survey 6th October, 1824. The boundaries given in the entry are, “beginning at the N. E. corner of Martin Armstrong’s 5000 acre entry, running thence East, about 252 poles to the West boundary of John Holmes’ and others, 1000 acre entry, running thence South, «fee., for complement.” The survey gives the boundaries thus, “beginning on a stake the N. E. corner of Martin Armstrong’s 5000 acre entry, running East 252 poles to a Spanish oak on the West boundary of John Holmes and others; thence South with Holmes’ line, passing his corner, in all 406£ poles to a stake; thence West, 252 poles to a stake, on M. Armstrong’s East boundary; thence North with the same, 4064- poles to the beginning.” The callB in the grant are precisely the same.
The defendant in error claims under a grant for 129 acres, dated 15th January, 1825 — entry 25th June, 1824 — survey 19th August, 1824. The calls of the entry are, “beginning at the South West corner of a 640 acre entry, No. 624, in the- name of the President and Trustees, in East boundary of 5000 acre entry, in the name of Martin Armstrong; thence East, 200 poles, and South for complement.” The survey begins, “ at a stake and pointers, the S. W. corner of a 640 acre entry in the name of the President and Trustees on the East boundary of a 5000 acre entry” «fee.; thence East with *691 the President and Trustees’ line, crossing a branch at twenty poles, to a hickory sappling; thence South, 103 2-10 poles to a hickory sapling; thence West, 200 poles to a stake on said Armstrong’s line; thence -North with his line,- 103 2-10 poles to the beginning. Same calls in the grant.
It will be seen that there is no conflict between these titles upon the face of the papers, either in the entries, surveys or grants. But in the actual survey of the first entry, which was subsequent to that of the last, the Southern boundary was marked out at the distance of 442-|- instead of 406-£ poles South of the Northern line fixed in the entry, survey and grant; thereby including more than 640 acres, but not exceeding ten per cent, excess. By the prior survey of the junior entry, the dividing line was marked out by the survey- or at the distance called for in the entry, survey and grant of the 640 acre tract, by which the true quantity entered was given, to both parties.
The only question raised in the case is, what is the true location of the Southern boundary of the 640 acre tract under the facts stated, according to the land laws of the State. The jury found it to be at the termination of the distance, of 406-J- poles, in conformity with the charge of-,the judge."
If the state of the law be such as to render the charge erroneous, it would be most singular and unjust, yet that would be no conclusive answer to positive enactments, if such exist. What is the case?
The State opens her books, and offers her vacant land for sale or appropriation. The University of North Carolina takes 640 acres, and has it entered upon the *692 records, with, the courses and distances, without marking timber ór calling for natural objects; East Tennessee College enters 129 acres adjoining; it on the South, and it is marked out by the surveyor, and granted by the State, leaving the first entry with its full dimensions undisturbed; then, the first enterer has his land marked out, and passes thirty-six poles beyond the calls placed upon the public records, and embracing more land than he entered by invading the territory of the junior en-terer. The one is to get forty acres more than he bought, and the other that much less. It is true, that between conflicting claimants, if there be no other question, the prior right must prevail — it is for that reason, the best. So if there was nothing else in this case, there would be no difficulty. But the question here is, how far South does the older title extend? to that extent it must be sustained.
It is an admitted general rule, that a call for marked lines, or natural objects, will prevail over course and distance, when both are 1 expressed in the title papers, and perhaps the same‘rule would apply when the calls are only for course and distance, but at the same time, or before intervening rights arise, lines are run and marked. It is also very well settled, that where the calls are only for course and distance, the party is confined to them, if nothing else has been done. These are the general principles. What is the effect of their application to this case.
At the time of the inception of the younger title, where was the Southern boundary of the elder? The law, to avoid all conflict or injury, had provided a certain mode of ascertaining that — the public books of the *693 surveyor general. Here tlie entry of 640 acres was fonnd with a definite and fixed Northern boundary 252 poles long, thence “Sonth, &c., for complement.” This was "done and dated 12th December, 1822. On the 25th June, 1824, when the other entry was made, no survey had been made of the first, no objects marked, so he made his entry for 129 acres, calling for the Sonth boundary of the first, which would be 406-J poles from the North: and on the 19th September of the same year, had it so surveyed and marked out, and obtained a grant from the State on the 15th of January following, calling for the corner trees, &c., designated in the survey. Several months after this line was correctly marked out in strict conformity with the calls of' both entiles, the first entry was surveyed, and disregarding the distance in the entry, and the quantity of acres to be included, and the line previously run and' marked, made the South boundary thirty-six poles further South, and included forty acres more land than was entered. But still, in the grant issued six years afterwards, the call is only to run 406-J- poles South, and the quantity only 640 acres. Now, because it is-proved that when the first entry came to be surveyed, the surveyor, in disregard of the express calls of the-entry, which was his chart, and his duty, which was to mark out the land entered, and no more or less, and the known rights of others, marked a line for the South boundary, thirty-six poles beyond the true distance — it is contended that this wrong and injustice must be sustained, because it was the duty of the surveyor to have surveyed the oldest entry first, and if he had done so, it would have been legal to have so *694 transcended the calls as to include any excess not exceeding ten per cent. But would it have been legal to do so? We will see hereafter.
It is insisted further, that the grant upon the last entry was void, by the act of 1783, ch. — § 19, and 1787, ch. 23, 2 Haywood & Cobb’s, 27-34, because it was issued upon „ an entry, and surveyed before the survey of an older entry. If it were admitted that these acts constitute a part of the land system of West Tennessee, which question need not now be decided — we do not think they would have the effect contended for by the counsel. When it is provided that the grant shall be void, it must certainly be as to the prior entry, and so far as it conflicted with it. There could be no reason for going beyond this.
The object was to protect the first purchaser from any advantages the second might derive from the unlawful act of the surveyor, who was a public officer. But can it be for a moment supposed, that it was the intention of the legislature to apply this stringent provision to a case where the former entry is clear, precise and distinct, as to the lands appropriated, and his calls are observed strictly by the subsequent entry, survey and grant, that the latter should be void, barely and solely for the fact that the State’s officer first marked it out by a survey?
We are aware of no decision which has gone to that extent, and presume none such can be found, or has, or will ever be made. It is true, that the courts have held under these acts, that in such a case, so far as the rights of the first enterer are concerned, they shall not be affected. The rule is thus laid down *695 in Nelson vs. Kilcannon, 4 Hay., 182. Meigs’ Dig., 674. “If a subsequent entry, calling for a former entry be surveyed first, the survey should steer clear of every part which the former entry might legally include, when surveyed in a shape the law allowed of. If not so surveyed, and the first entry is afterwards surveyed according to law, and includes a part of the land included in the first survey, the younger enterer cannot impeach the survey of the elder.” But it will be observed, that to produce the effect claimed, this rule requires that the survey so prematurely made, because it is upon a younger entry, must cover land which a survey upon the first entry “might legally include,” and the after survey of the prior entry must be made “according to law.”
How, it is said, that the survey on the first entry “might legally include” any quantity of land not exceeding ten per centum over 640 acres, and therefore, the younger would be acting “according to law” in running and marking the lines thirty-six poles beyond the calls. Instead of this being so, in the 19th section of the act of 1819, ch. 1, H. & 0., 92, which is the basis for the land system in this section of the State, we find this provision “in all cases in making original surveys, the surveyor shall not make any allowance^ but shall make each survey on each entry or location, as nearly as practicable for the quantity called for in such entry or location, provided there is vacant land sufficient to fill the Same. And should it hereafter appear that any tract of land which has, or may be surveyed by and under the authority of this act, which shall contain within the lines and corners of such sur *696 vey, one tenth, more than the quantity called for, in the entry on which such survey shall be made, the said addition of one tenth, shall be deemed a fraud practiced upon the state by the surveyor, and it shall be deemed and declared a misdemeanor in the said survey- or, who shall make such survey,” for which he shall be indicted, and upon conviction, removed from office, and fined and imprisoned at the discretion of the court. It is not then a lawful, but a very penal act for the surveyor to include an excess of ten per cent, in his survey. True, if it be done and granted, the title will not be disturbed by the State, unless there is more than that excess. Nor can a subsequent enterer, calling for his line, drive him from his calls or marks, if he has not more than ten per cent, excess.
Though a wrong and fraud practiced upon the State, yet rather than unsettle established lines, he is permitted to retain it. It was not lawful nor approved, but for reasons of policy, barely permitted.
This case, however, is entirely different where his courses, distances and quantity, unaffected by marks or natural objects, are distinctly given in his contract with the State — the entry, and another sale is made by entry in strict conformity to it. It is too late then, .to flange his calls so as to interfere with the subsequent claimant, who acted upon the faith of the recorded title paper before him. It is true, that if no other right had intervened before the survey of his entry, the State would not disturb his title, or permit any younger en-terer to do so, if he did not exceed ten per cent., but would punish the surveyor for the fraudulent and illegal act, by removal, fine and imprisonment.
*697 If then the older entry is surveyed, even after the younger, it shall prevail over it, provided it is surveyed “according to law,” but not otherwise. Then, how does the law require it to be done? This is answered in the extract given above, from the act of 1819. “ The surveyor shall not make any allowance, but shall make each survey on each entry or location, as nearly as practicable, for the quantity called for in such entry.
But this was not so made, and is not therefore according to the law. § 4, 5 and 6, of the same act, set forth the accuracy and particularity required to be observed in the making of entries and locations. It was intended to guard effectually against interferences, and would, if observed in good faith, utterly prevent them.
A departure from these requisitions cannot be permitted, when the effect would be to work an injury to the rights of others innocently and legally acquired.
In cases like the one under consideration, the first enterer must be estopped from departing from the written boundaries furnished for his land, so far as a younger enterer who has acted upon the faith of their correctness, would be affected by it.
The result is, that the law was correctly charged by his Honor, the circuit judge, and his judgment should be, and is affirmed.
Totten, J., dissented.